UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


KATHY HOLLER,                                      Case No. 1:04-cv-037

      Plaintiff,                                Watson, J.
                                                  Black, M.J.
vs.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, *et. al.,*

      Defendants.


**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANTS' MOTION FOR JUDGMENT ON THE MERITS (Doc. 22) BE DENIED; (2) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 23) BE GRANTED; (3) DEFENDANT FLUOR DANIEL FERNALD BE DISMISSED AS A PARTY TO THIS ACTION; (4) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF ON HER ERISA CLAIM; AND (5) THIS CASE BE CLOSED**

      This matter is before the Court on a motion by defendants, the Hartford Life and Accident Insurance Company ("Hartford") and Fluor Daniel Fernald, Inc. ("FDF") (collectively "defendants"), for judgment on the merits (doc. 22) and a motion by defendants for summary judgment (doc. 23).  Plaintiff Kathy Holler filed a response in opposition to the motions (doc. 27), to which defendants have replied (*see* doc. 30).  The matter is ripe for review.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

## I. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* alleging wrongful termination of long term disability benefits. Additionally, she alleges financial and emotional stress, breach of contract, bad faith, misrepresentation, and defamation of character in violation of state law.

Plaintiff claims that she is disabled due to fibromyalgia, thoracic outlet syndrome, and low back pain. (*See* doc. 27 at 1). According to the allegations in the complaint, plaintiff was employed by FDF from 1992 to 2001. (*See* doc. 2). During her employment, she enrolled in short term and long term disability insurance plans, which were administered by Hartford. (*See id.*) She was approved for short term disability benefits in April 1999. (*See id.*) She was approved for long term disability benefits in December 1999. (*See* doc. 17, Administrative Record (hereinafter "AR") 239).

In November 2000, Hartford determined that plaintiff was no longer disabled and terminated her disability insurance benefits. (*See* doc. 2). The termination decision was based, in part, on a surveillance video showing her activities outside of her home before going to a work evaluation (which had been scheduled by Hartford), outside of a shopping mall, and upon her return home. (*Id.*) Hartford explained to plaintiff that she was capable of more than she had told them. (*Id.*)

Plaintiff counters that she had told Hartford on her application for long term

-2-

benefits that she went to scheduled medical appointments and to the grocery.  (*Id.*)  She seeks reinstatement of her benefits as well as compensatory and punitive damages.  (*Id.*)

In their motion for judgment on the merits (doc. 22), defendants maintain that the decision to terminate long term disability benefits was rational in light of the evidence that was available at the time of the termination decision, including medical records, a functional capacity evaluation ("FCE"), and the surveillance video and its accompanying report.  (*See* AR 61-66).

With respect to the applicable standard of review, defendants maintain that the decision to deny benefits must be reviewed under the arbitrary and capricious, rather than *de novo*, standard of review.  *See Killian v. Healthsource Provident Adm'rs, Inc.,* 152 F.3d 514, 521 (6th Cir. 1998).  Plaintiff does not dispute that the arbitrary and capricious standard should apply.

Contrary to plaintiff's assertions, defendants maintain that she is capable of performing the essential duties of her occupation and that the decision to terminate benefits was not arbitrary and capricious.

As grounds for the motion for summary judgment, defendants contend that the employer, FDF, is not a proper party defendant under ERISA because it was not responsible for determining eligibility for benefits.  Defendants also seek dismissal of plaintiff's state law claims  –  financial and emotional stress, breach of contract, bad faith, misrepresentation, and defamation  –  on the grounds of preemption.

## II.  STANDARDS OF REVIEW

The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *University Hosps. v. Emerson Elec. Co.,* 202 F.3d 839, 845 (6th Cir. 2000).  If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard.  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989); *University Hosps.,* 202 F.3d at 845.

The arbitrary and capricious standard applies in the present case because the long term disability insurance policy at issue gives Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  (AR 032; *see also* AR 021 (defining "We/Us/Our" as "Hartford Life and Accident Insurance Company")).  "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'" *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996)).

Nonetheless, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential.  *Moon v. UNUM Provident Corp.,* ___ F.3d ___, ___ 2005 WL 664330, at *5 (6th Cir. Mar. 22, 2005).  The court explained

-4-

as follows:

> While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions.  As we observed recently, "[t]he arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision."  *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)).  Indeed, '[d]eferential review is not no review, and deference need not be abject."  *McDonald,* 347 F.3d at 172.  Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues."  *Id.*

*Id.*

Only if the administrative record supports a "reasoned explanation" for the termination of benefits, the decision is not arbitrary or capricious.  *See Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000) (cited in *Moon,* 2005 WL 664330, at *5).

Summary judgment is proper if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the governing substantive law, might affect the outcome of the action.  *Anderson*, 477 U.S. at 248.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.,* 475 U.S. 574, 587 (1986).

In response to a properly supported motion, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied,* 451 U.S. 914  (1981)).

## III.  DISCUSSION

The record does not support a finding that Hartford's decision to terminate plaintiff's long-term disability benefits was rational in light of the policy provisions.

The policy at issue in this case provides, in pertinent part, that an insured employee is disabled when:

(1)    during the Elimination Period; and
(2)    for the next 36 months, [she] is prevented by:

> (a) accidental bodily injury;
> (b) sickness;
> (c) mental illness;
> (d) substance abuse; or
> (e) pregnancy,

from performing the essential duties of [her] occupation, and as a result [she] is earning less that 20% of [her] Pre-disability earning, unless engaged in a program of Rehabilitative Employment approved by us.

-6-

> After that, [she] must be so prevented from performing the essential duties
> of any occupation for which [she] is qualified by education, training, or
> experience.

(AR 021).

Because plaintiff's long-term disability insurance benefits were terminated before the expiration of the 36-month period, her eligibility for benefits must be based on whether she can perform the essential duties of *her* occupation rather than *any* occupation.

An employee's occupation is defined as her occupation "as it is recognized in the general workplace.  ...  [It] does not mean the specific job [she] is performing for a specific employer or at a specific location."  (AR 022).

Plaintiff was employed at FDF as a "Training Team Member."  (Doc. 22 at 14).  She described her job as typical office work that required her to "perform computer data input, answer phones, ... and [train] personnel about ... company computer systems." (AR 070).  Computer and keyboard use was described as "continuous."  (AR 099).  Her position was classified as "sedentary" as defined by the Dictionary of Occupational Titles ("DOT"):

> Lifting 10 lbs maximum and occasionally lifting and/or carrying such
> articles as dockets, ledgers, and small tools.  Although a sedentary job is
> defined as one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties.  Jobs are sedentary if
> walking and standing are required only occasionally and other sedentary
> criteria are met.

(*Id.*)

-7-

In support of her application for long term disability benefits, plaintiff submitted a statement of disability by her primary attending physician, Ralph C. Samlowski, M.D. (*See* AR 302-03). Dr. Samlowski identified the primary diagnosis of fibromyalgia and secondary diagnoses of thoracic outlet syndrome and bulging lumbar disc L4-5 with subjective symptoms of pain, fatigue, weakness, numbness, and tingling. (AR 302). He stated that plaintiff had difficulty standing or sitting in any position for more than 20 or 30 minutes. (AR 303). He stated that reaching or working overhead should be limited as much as possible. (*Id.*) Notably, he stated that plaintiff could not sustain keyboard use or repetitive hand motion for more than ten or twenty minutes. (*Id.*)

Although plaintiff was approved for long term disability benefits in December 1999, Hartford continued to monitor her claim.

On October 13, 2000, at Hartford's request, plaintiff underwent a Functional Capacity Evaluation ("FCE"), which was performed by a licensed physical therapist, Richard J. Wickstorm, P.T., C.P.E. (AR 146-54). The evaluation lasted for about three hours. (*See* AR 110). Mr. Wickstorm reviewed the medical reports reflecting the diagnoses for fibromyalgia, thoracic outlet syndrome, and lumbar disc disease and conducted a series of functional tests. (*See* AR 147, 150-54). He reported that plaintiff performed at a "light" degree of physical demands and that, while her performance was at times self-limited and inconsistent, she was capable of performing the essential duties of her occupation. (*See* AR 146-47).

-8-

On the date of the FCE, an investigator conducted a surveillance of plaintiff that resulted in the creation of a video record and written report.  (AR 104-12).  The video purported to show plaintiff emptying a large planter and moving trash containers prior to driving herself to the FCE.  (AR 109).  After the evaluation, the investigator observed plaintiff driving herself to a shopping mall. (AR 110).  Approximately thirty-five minutes later, plaintiff exited the mall pushing a basket filled with shopping bags, which she then transferred to her van.  (AR 110-11).  When plaintiff arrived back at her residence, she unloaded the shopping bags from the van with some help from another woman.  (AR 111).  The investigator noted in his report that plaintiff showed no outward sign of pain or disability.  (*See id.*)

On November 15, 2000, the investigator interviewed plaintiff regarding her claim.  (*See* AR 70-73).  She described her daily activities which center around caring for two young children.  (*See id.*)  She stated that her condition has worsened over time and that she experiences pain on a daily basis.  (*See id.*)

After reviewing the FCE, the surveillance report, and the interviewer's notes regarding plaintiff's daily activities, Hartford determined that plaintiff could perform the essential duties of her occupation and was no longer entitled to disability benefits under the policy.

The decision is not rational for the reasons that follow.

"Fibromyalgia" has been described as follows:

Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches.

*Walker v. American Home Shield Long Term Disability Plan,* 180 F.3d 1065, 1067 (9th Cir. 1999) (citing Arthritis Foundation Pamphlet, Fibromyalgia 6-8 (1989)).  Moreover, the Sixth Circuit Court of Appeals has recognized the difficulties of assessing whether a claimant allegedly suffering fibromyalgia, or fibrositis, is disabled:

Fibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances.  In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results -- a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.  There are no objective tests which can conclusively confirm the disease[.]

*Preston v. Secretary of Health & Human Servs.,* 854 F.2d 815, 817-819 (6th Cir. 1988). "The disease itself can be diagnosed more or less objectively ..., but the amount of pain that a particular case produces cannot be." *Pralutsky v. Metropolitan Life Ins. Co.,* 316 F. Supp. 2d 840, 853 (D. Minn. 2004).

It is generally accepted that fibromyalgia tends to fluctuate in severity of symptoms over time, and that patients have "good" days and "bad" days." *See, e.g., Brennan v. Reinhart Institutional Foods,* 211 F.3d 449, 452 n.2 (8th Cir. 2000) (expert testimony regarding fibromyalgia).

-10-

The interviewer's notes (AR 070-073) and the surveillance report (AR 104-112) support Hartford's assertions that plaintiff can perform a range of activities but does not establish that she can perform such activities for the duration of an eight-hour work day, five days a week.  Hartford's reliance on the surveillance report is undermined by the fact that the investigator waited outside of plaintiff's residence for three days, yet observed plaintiff outside of her home on only one day.  Although she was observed lifting and handling a number of objects (*i.e.,* trash cans, planter, grocery bags, a pumpkin), there were no instances of her engaging in the kind of activities required of her occupation.

Plaintiff admits that she can lift items weighing up to ten pounds.  (AR 071).  The basis of her disability claim are the symptoms associated with fibromyalgia including fatigue, pain, and problems with concentration.

Additionally, Mr. Wickstrom's recommendation following the FCE is inconsistent with a finding that plaintiff could fully perform her former occupation.  Mr. Wickstrom reported that plaintiff was only "minimally" capable of performing the physical demands of sedentary work and recommended a gradual transition back to work, beginning with working only four hours a day.  (*See* AR 147).

There is no evidence in the record to show that plaintiff could maintain the continuous computer and keyboard use that was essential to her occupation.  The FCE tested, in part, plaintiff's abilities to "pick, pinch, or otherwise manipulate small items" with the fingers of each hand.  (*See* AR 150).  The right hand trials consumed hardly

-11-

more than two minutes, yet resulted in right wrist and shoulder pain.  (*Id.*)  While no problems were reported with respect to the left hand trials (*see id.*), the trials took barely three minutes to complete.  Although Mr. Wickstrom found that plaintiff was physically capable of performing the tasks that comprise the essential functions of her job, his evaluation provided no evidence that plaintiff could sustain such activities for a full eight-hour work day.

The administrative record does not support a "reasoned explanation" for the termination of benefits.  Accordingly, the motion for judgment on the merits should be denied, and judgment should entered in favor of plaintiff on her ERISA claim.

## B.

Defendants also seek summary judgment on the grounds that FDF is not a proper party defendant and that plaintiff's state law claims are preempted.

### 1.     *Proper party defendant*

It is well established in the Sixth Circuit that only a plan administrator can be held liable under § 1132(c).  *Hiney Printing Co. v. Brantner,* 243 F.3d 956, 961 (6th Cir. 2001); *VanderKlok v. Provident Life & Accident Ins. Co.,* 956 F.2d 610, 617 (6th Cir. 1992).  "Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits."  *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.), *cert. denied,* 488 U.S. 826 (1988).

Defendants are entitled to summary judgment dismissing FDF as a defendant

-12-

because there is nothing in the record to show that FDF exercised any control over the administration of the disability insurance plan.

2.      *Preemption*

Plaintiff included in her complaint claims for financial and emotional stress, breach of contract, bad faith, misrepresentation, and defamation of character in violation of state law.

It is well established that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA."  *See Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir. 1991), *cert. dismissed,* 505 U.S. 1233 (1992).  In certain circumstances, however, state law claims may adjudicated apart from ERISA.  *See Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 452-53 (6th Cir. 2003); *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.,* 195 F.3d 803, 806-09 (6th Cir. 1999).  State law claims are not preempted "where 'their effect on employee benefit plans is merely tenuous, remote, or peripheral.'"  *Marks,* 342 F.3d at 452 (quoting *Cromwell,* 944 F.2d at 1272).

In a prior Order denying plaintiff's motion for leave to engage in discovery, this Court found that "it does not appear that such circumstances are present here."  (*See* doc. 15).  "Notwithstanding plaintiff's listing of various grounds for relief, she does not present any claims unrelated to the decision to terminate benefits."  (*Id.*)

Defendants are entitled to summary judgment on plaintiff's state law claims

because she has not shown that the effect of her state claims on her ERISA claim is "merely tenuous, remote, or peripheral." To the extent that plaintiff's state law claims arise from the denial of benefits, they should be dismissed as preempted.

Alternatively, to the extent a state court could adjudicate plaintiff's claims without having to determine plaintiff's right under ERISA, the claims should be dismissed without prejudice under 28 U.S.C. § 1367(c)(3). *See, e.g., Mays v. Buckeye Rural Elec. Co-op., Inc.,* 277 F.3d 873, 881-82 (6th Cir. 2002) (the district court may forego the exercise of continuing supplemental federal jurisdiction over the plaintiff's pendent state law claims, in the absence of an independent basis for original federal jurisdiction).

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for judgment on the merits (doc. 22) be **DENIED,** and that judgment be **ENTERED** in favor of plaintiff awarding her long term disability benefits;

2. The motion for summary judgment (doc. 23) be **GRANTED,** that defendant Flour Daniel Fernald be **DISMISSED** as a party defendant to this action, and that plaintiff's state law claims be **DISMISSED**; and

3. This case be **CLOSED**.


Date:  5/19/05                                      s/Timothy S. Black
                                                    Timothy S. Black
                                                    United States Magistrate Judge


-14-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHY HOLLER,                                          Case No. 1:04-cv-037

      Plaintiff,                                   Watson, J.
                                                       Black, M.J.

vs.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, *et. al.,*

      Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof. That period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).